## EX PARTE BUD RUSSELL.

### No. 2843.   Decided October 14, 1913.

**1.—Murder—Bail—Constitutional Law.**

All prisoners shall be bailable by sufficient surety, unless for capital offenses when the proof is evident.   Article 1, section 11, Constitution.

**2.—Same—Capital Offense—Bill of Rights—Proof Evident.**

In order to make the case non-bailable under the Bill of Rights, the proof must be evident that there has been committed a capital offense, and the proof must show that relator would be punished by death, if the law is properly administered, and the word "evident" means clear, plain, and obvious.   Following Ex parte Boyett, 19 Texas Crim. App., 17, and other cases.

**3.—Same—Change of Law—Rule Not Changed.**

Under the old law, murder was of two degrees, but under the present law as amended, the degrees of murder are abolished and the punishment may be either death or imprisonment in the penitentiary, but this can not affect the constitutional rule authorizing bail in all cases except capital offenses where the proof is evident.

**4.—Same—Statutes Construed—Purpose of Amendment.**

It does not follow that because the definition and punishment for murder has been changed that, therefore, all cases of murder are non-bailable; the intention of the Legislature would show that this was not the purpose of the amendment, and the circumstances attending each killing must be the guiding rule as to whether the same is bailable.

**5.—Same—Case Stated—Reversible Error.**

Where, upon trial of habeas corpus proceedings for bail under a charge of murder, the facts disclosed that the defendant was entitled to bail, a judgment of the lower court refusing bail will be reversed and remanded and the bail fixed.

Appeal from the Criminal District Court of Harris.   Tried below before the Hon. C. W. Robinson.

Appeal from an order of the District Court refusing bail in a capital case.

The opinion states the case.

*Kahn, Williams & King,* for appellant.—On question of bail:   Wallace v. State, 20 Texas Crim. App., 360; Ex parte Newman, 38 Texas Crim. Rep., 164; Farrar v. State, 42 Texas, 265; Ex parte Beacom, 12 id., 318; Ex parte Foster, 5 id., 625; Summers v. State, 5 id., 365; Caldwell v. State, 41 Texas, 86.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, Judge.—Relator having been charged with murder, resorted to a writ of habeas corpus for the purpose of obtaining bail. Upon a hearing under the writ the District Court remanded him without bond.

After reviewing the case the court is of the opinion that relator is entitled to bail.   Therefore the judgment is reversed, and the sheriff of

Harris County is ordered to take bail in the sum of $5000, conditioned as the law requires. Upon the execution of this bond the relator will be discharged from custody.

There are some law questions involved in the case that are not here discussed. In an opinion to be filed later they will be taken up and reviewed, and that opinion filed with the record.

The judgment is reversed and bail granted in the sum of $5000.

*Bail granted.*

DAVIDSON, JUDGE.—Bail was granted relator in the sum of $5000. The reasons for the decision were not stated at the time. We now proceed to state some of the legal reasons for the ruling of the court with reference to the recent change in our murder statute.

The Constitution, article 1, section 11, reads as follows: "All prisoners shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident," etc. The general proposition enunciated in the Bill of Rights, therefore, is that all prisoners shall be bailable with the exception stated, that unless for capital offenses when the proof is evident. In order to make the case non-bailable under this clause of our Constitution, the proof must be evident that there has been committed a capital offense. Construing this, it has been held that all parties are entitled to bail when charged with an offense that may be punished capitally, unless the evidence is strong and clear and would lead a well guarded and dispassionate judgment to the conclusion that an offense has been committed, and that the accused is the guilty agent, and would be punished capitally if the law is properly administered. Of course, a capital offense is one which may be punished by death. There can be no capital offense unless the punishment is by death. The word "evident" means plain, clear and obvious. Ex parte Boyett, 19 Texas Crim. App., 17. The cases laying down the above proposition may be found collated in Mr. Branch's Criminal Law, secs. 93 and 96.

Prior to the recent Act of the Legislature murder was divided into two degrees. The first degree was predicated upon express malice, lying in wait, poisoning, etc. The second degree was constituted by the absence of express malice, or those circumstances which constituted murder in the first degree on one side, and such matters as would reduce the homicide by reason of extenuating circumstances or mitigation to manslaughter or negligent homicide, or excused or justified the act of killing. The punishment for murder in the first degree under the old law was death or life imprisonment in the penitentiary; for murder in the second degree, any term of years in the penitentiary not less than five. The new or amended statute abolishes the two degrees of murder, and provides the punishment for murder shall be death, life imprisonment or any term of years in the penitentiary not less than five. This definition of murder with its prescribed punishment does not and can not affect the constitutional rule authorizing bail in all cases except capital offenses where the proof is evident. The same punishment is prescribed

in cases of rape or robbery by firearms. But in all such cases the proof, in order to deny bail, must be evident that the offense is capital. It does not follow that because the definition and punishment for murder has been changed, therefore, all murder cases are non-bailable. This is borne out by the very terms of the statute itself, because such punish-ment is graduated from five years in the penitentiary to the death pen-alty. If the Legislature had intended to make all murder non-bailable or capital, they would have used appropriate language and fixed the pun-ishment of death, but such is not the statute. The rule laid down by the Legislature would show and indicate that it was not the purpose of it to cause a conflict between the Act of the Legislature and the pro-visions of the Bill of Rights. The Legislature intended, as did the makers of the Constitution, to deny bail only when the proof is evident of a capital offense, or that the party would be punished with death under the rules prescribed and well known to our jurisprudence. The circumstances attending each killing must be the guiding rule as to whether the offense is capital or not, and, of course, whether bailable or not.

It is not the purpose of this opinion to go into a long treatise or dis-cussion of these matters, but simply to reiterate the law as it has been declared not only by the Constitution but understood thoroughly in the jurisprudence of the State, that in order to refuse bail the proof must be evident of a capital offense, that is, if the law is properly adminis-tered the conviction would be of a capital offense. There has been a great number of cases of murder that are not capital. While the Legis-lature abolished the distinction between the two degrees of murder, it was not the purpose of that Act, as evidenced by its terms, to make all cases non-bailable. There was simply a general definition given of murder, prescribing the punishment from minimum to maximum, as in the case of robbery by firearms or rape. That robbery and rape cases are non-bailable, simply by reason of the fact the parties may be pun-ished capitally, would depend upon the circumstances attending the case as to the proper conclusion of the enormity of guilt.

Applying the rules to the case in hand, stating just enough of the facts to show the environments of the case, the record discloses that appellant was the transfer agent of penitentiary convicts. That in obe-dience to his duty he was assisting two other officers in carrying a lot of prisoners from Huntsville through Houston to what is known as the Sugarland or Imperial State farm. While at Houston the prisoners were transferred from one train to another, and were securely locked in pairs. The deceased, one of the prisoners, managed in some way to unlock the chain around his neck, and jumping through the car window, sought to escape. After the deceased escaped from the car he was shot and killed by relator. It is unnecessary to go into a detail of the cir-cumstances further than stated. They will become matters for investi-gation should relator be tried before a jury. Our statute provides, article 1094, section 10, that "A person under sentence of death or im-

prisonment in the penitentiary, or attempting to escape from the penitentiary, may be killed by the officer having legal custody of him if his escape can in no manner be prevented." The deceased was a penitentiary convict and attempting to escape, and was killed by the relator, who had him in legal custody. Now, relator would be justified or excused under the statute unless deceased's escape could in some other manner be .prevented. From the evidence there was no ill-will shown between relator and the deceased, and as we gather from the facts, the killing occurred only ·by reason of the escape. This much of the evidence has been stated in order to justify the conclusion of this court that the case is bailable under the rules of law as applied to this record. The trial court was, therefore, not justified in refusing bail.

*Reversed and remanded and bail granted.*