## EX PARTE JOHN LITTLETON.

### No. 6210.          Decided March 9, 1921.

#### 1.—Habeas Corpus—Bail—Rule Stated—Burden of Proof.

All prisoners should be bailable by sufficient sureties unless for capital offenses where the proof is evident, and the burden is upon the State, but when the evidence is clear and strong, leading a well-guarded and dispassionate judgment to the conclusion that the offense has been committed; that the accused is the guilty agent, and that he would probably be punished capitally if the law is administered, bail is not a matter of right. Following Ex Parte Smith, 23 Texas Crim. App., 100, and other cases.

#### 2.—Same—Murder—Express Malice—Bail—Constitutional Right.

The elements of murder in the first degree, as interpreted before the degrees were abolished by statute are pertinent upon the question of bail, and where the evidence shows that the homicide was brought about by the accused with express malice, he may be refused bail.

#### 3.—Same—Express Malice Definition of—Blackstone's Commentaries—Rule Stated.

Express malice is, when one with a sedate, deliberate mind, and formed design doth kill another; which formed design is evidenced by external circumstances, discovering that inward intention, as lying in wait, antecedent menaces, former grudges, and concerted scheme, to do the deceased some bodily harm. Following McCoy v. State, 25 Texas, 33.

#### 4.—Same—Implied Malice—Rule Stated.

Implied malice is that which the law infers from or imputes to certain acts; thus, when the fact of an unlawful killing is established and there are no circumstances in evidence which tend to establish the existence of express malice, nor which tend to mitigate, excuse, or justify the act, then the law implies malice. Following Martinez v. State, 30 Texas Crim. App., 137.

**5.—Same—Case Stated—Express Malice—Capital Punishment.**

Where, relator was inspired by express malice, according to the decision of the trial judge, and the evidence is such as to lead a well-guarded and dispassionate judgment that the accused, who admittedly was the guilty agent, would probably be punished capitally in the due administration of the law, the decision of the court below denying bail is affirmed.

Appeal from the District Court of Eastland. Tried below before the Honorable Geo. L. Davenport.

Appeal from a habeas corpus proceeding denying bail in a murder case.

The opinion states the case.

*D. G. Hunt,* and *J. R. Stubblefield,* for relator.—Cited: Ex Parte Townsley, 220 S. W. Rep., 1092; Ex Parte Firmin, 131 id., 1113; Ex Parte Jones, 197 id., 997; Ex Parte Wade, 222 id., 979; Ex Parte Hill, 201 id., 996.

*R. H. Hamilton,* Assistant Attorney General, for the State.—Cited Ex Parte Young, 222 S. W. Rep., 242; Ex Parte Sapp., 179 id., 109; Sapp et al. v. State, 77 Texas Crim. Rep., 401; Ex Parte Jones, 31 Texas Crim. Rep., 422.

MORROW, JUDGE.—Relator is indicted for murder and appeals from an order of the District Judge refusing bail.

On the night of January 26th the relator shot and killed his father-in-law, Cal Yancey. Some fifteen days prior to the homicide, relator and his wife separated, and she was at the home of her parents. Inferentially it appears that at least, in part, the mission of the relator at the home of the deceased was to deliver to his wife some money due her in the division of their property. Upon his entry, he was invited to a seat by the deceased, but declined and went with his wife into an adjoining room and there engaged with her in a conversation for some thirty minutes, at the termination of which, he appeared at the door which separated the two rooms, ordered the deceased, who was sitting with his back to the door, to throw up his hands. The deceased complied, started to rise from the chair and wheeled in the direction of the relator, and received a shot in the top of his head on the left side near the front. Immediately before the shooting he was engaged in a game played on a checker-board with one Webb, and was sitting at a point in the living room at a distance from the door connecting that room with the kitchen, which distance is in controversy; some of the witnesses placing him at about two feet and others at about ten feet from the door. The deceased fell in the kitchen. Two other shots were fired by the relator, one immediately after the first and the other after a short interval, during which the relator backed some distance into the kitchen. During the interview with his wife, the deceased walked

through the kitchen and back to the living-room, leaving the door between the two rooms ajar. His reason for going is not definitely disclosed, though no conversation appears to have taken place. Some days before the homicide, relator in a conversation with his wife, was overheard to say: "I am coming back and bring you that money when I get it; I am coming back one more time, and when I leave, I will leave satisfied." During the conversation on the occasion of the homicide, Webb overheard some remarks which, in substance, related to a discussion about dividing the property in which relator was asked by his wife if the division was satisfactory, upon which he remarked that it was and added: "I will be satisfied before I leave here."

Relator's wife had been twice married. Prior to the first marriage, he was a suitor, and his suit was disfavored by the deceased on account of the age of his daughter. Subsequent to the death of her first husband, her marriage with the relator seems to have taken place without objection. Immediately before the shot was fired, she exclaimed: "Look out, papa." After the shooting, relator backed out of the house, holding the pistol presented, ran away, and subsequently voluntarily surrendered to the officers.

We have made a substantial but not a detailed statement of the evidence. Upon the rules of law touching the right to bail, there is but little room for controversy. We recently stated them in Ex Parte Townsley v. State, 87 Texas Crim. Rep., 252, 220 S. W. Rep., 1092, as follows:

"'All prisoners shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident.' Const. Art. 1, Sec. 11. The relator is held on a charge of capital offense. The burden was upon the State to show that the proof was evident. Firmin v. State, 60 Tex. Cr. R. 370, 131 S. W. 1113; Newman v. State, 38 Tex. Cr. R., 164, 41 S. W. 628, 70 Am. St. Rep., 740."

"The rule of law controlling has been stated in varying language, but there is a substantial agreement that 'if the evidence is clear and strong, leading a well-guarded and dispassionate judgment to the conclusion that the offense has been committed, that the accused is a guilty agent, and that he would probably be punished capitally if the law is administered, bail is not a matter of right.' Ex parte Smith, 23 Texas App., 100, 5 S. W. 101. Unless the evidence is of such character, bail is a matter of right. Russell v. State, 71 Texas Crim. Rep., 377, 160 S. W. 76; Ex parte Stephenson, 71 Texas Crim. Rep., 380, 160 S. W. 77."

The elements of murder in the first degree, as interpreted before the degrees were abolished by the statute, are pertinent, we think, upon the right to bail in a given case. That is to say, where there is proved evidence that the homicide was brought about by the accused with express malice, he might be refused bail without violence to his rights under the constitution.

We have found no more comprehensive review of the subject of the right to bail and of the characteristics of express malice than that from the pen of Judge Roberts in McCoy v. State, 25 Texas Reports, page 33, in which it is said:

"The most complete and accurate view of the distinction between express and implied malice is to be found in Blackstone's Commentaries; which, it is believed, will be the better understood and appreciated, in proportion to the research into other sources of information."

From these Commentaries, two quotations are taken:

"Express malice is when one with a sedate, deliberate mind, and formed design, doth kill another; which formed design is evidenced by external circumstances, discovering that inward intention, as laying in wait, antecedent menaces, former grudges, and concerted schemes to do him some bodily harm." (4 Bla. Com. 198).

"The person must be of sedate, deliberate mind. He must be sufficiently self-possessed as to comprehend and contemplate the consequences of his acts. His acts must not be the result of a sudden, rash, inconsiderate impulse or passion. This, when there was an intention to kill, might still be murder, but not upon express malice. Hence, it is said, 'if a man kills another suddenly without any or without a considerable provocation, the law implies malice.'" (4 Bla. Com. 200; Hale, P. C. 455-6; 1 Russell, 483; Atkinson v. The State, 20 Tex., 520-1; Mitchell v. The State, 5 Yerg. 340.)

See also Wharton on Homicide, Sec. 83; Ruling Case Law, Vol. 13, page 765, Sec. 74.

The meaning of the term "express malice" and the means of distinguishing it from "implied malice" are stated by Judge Davidson in the case of Martinez v. State (30 Texas Crim. App., 137) in the following language:

"Express malice is where one with a sedate and deliberate mind and formed design unlawfully kills another, which formed design is evidenced by external circumstances discovering that inward intention, as lying in wait, antecedent menaces, former grudges, and concerted schemes to do him some bodily harm, or any other circumstances showing such sedate and deliberate mind and formed design unlawfully to kill another or to inflict serious bodily harm, which might probably end in the death of the person upon whom the same was inflicted."

"Implied malice is that which the law infers from or imputes to certain acts. Thus when the fact of an unlawful killing is established and there are no circumstances in evidence which tend to establish the existence of express malice, nor which tend to mitigate, excuse, or justify the act, then the law implies malice."

Applying the principles which have been stated above, this court has approved the refusal to bail on various occasions. In most of the cases reported the facts are not stated. In some, however, they are set out. Ex parte Meyers, 33 Texas Crim. Rep., 204; Randle v.

State, 22 S. W. Rep., 49; Ex parte Lebo, 88 Texas Crim. Rep., —, 227 S. W. 187.

Without making an analysis of the evidence, we will say that we discern nothing therein which would justify us in overturning the decision of the trial judge that in committing the homicide the relator was inspired by express malice, nor do we find that we might justly hold that the evidence was not such as to lead to a well-guarded and dispassionate judgment that the accused, who admittedly was the guilty agent, would probably be punished capitally in the due administration of the law.

We therefore order that the judgment denying the bail be affirmed.

*Affirmed.*