## EX PARTE B. C. GRAYSON.

### No. 10216.   Delivered May 19, 1926.

**Habeas Corpus—Bail Granted.**

Where appellant is denied bail by the court below or hearing of his habeas corpus, on appeal bail will be granted as a matter of right unless there is proof evident of a capital offense which renders probable the infliction of the death penalty. Primarily, the burden of proof is upon the state to show that bail should not be granted. The evidence in this case, as contained in the record before us, in our judgment is not such that renders probable the infliction of the death penalty, and bail is granted in the sum of $7,500.00. See Hill v. State, 83 Tex. Crim. Rep. 145, and numerous other cases cited.

Appeal from the District Court of Polk County.   Tried below before the Hon. J. L. Maury, Judge.

Appeal from an order remanding relator to the custody of the sheriff of Polk county without bail.   Bail granted.

The opinion states the case.

No brief filed for appellant.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

MORROW, Presiding Judge.—This is an appeal from an order of the District Court of Polk County denying bail. Appellant was charged by complaint with murder.

The deceased, Will Evans, was shot and killed by Materson Grayson, son of appellant. Evans was at his sawmill when the appellant and his son appeared. Vinson, an employe, was working about the mill and he heard someone say: "How about that fight," or "How about the fight." This did not divert him from his work, but soon after becoming aware that something unusual was taking place, he looked and saw Evans strike the appellant with a shovel. Appellant was knocked down and got up with a knife in his hand and was approaching Evans, who still had the shovel in his hand, when appellant's son, Materson Grayson, approached and shot Evans. The witness said that the boy holloed, "Look out," several times, half a dozen times, threw his gun up and then threw it down, and again put it to his shoulder and shot Evans when he was about twenty feet away. It appeared to the witness that while young Grayson was holloing, "Look out," that his father just passed to one side. The affray lasted not more than a minute. After striking appellant, Evans got on the log deck and was standing there with the shovel in his hand at the time he was shot.

Besham, another witness, testified. According to his testimony, Evans had just arrived at the mill and was in conversation with the witness about giving him some medicine when the appellant appeared and said: "How about that fight, old man?" Witness said: "Look out, Bill, he has got a knife, run." Evans turned and started back to his shovel. Grayson was following and Evans turned and struck at Grayson, who either stumbled or was knocked down between the carriage, and he got up. When Evans struck him he jumped upon the corner of the log deck and Mr. Grayson came in across the track. The witness further testified:

"I heard someone say: 'Look out, look out,' three or four times, and just as I turned to see who it was, this boy throwed up his gun and shot Mr. Evans. After the shooting Mr. Evans' brother appeared and the boy said: 'Get back there behind that saw dust pile or I will blow your brains out'."

The witness said there was a gunshot wound and a knife wound, the latter was on the shoulder of deceased. The boy stepped behind a pile of ties and reloaded his gun. The witness saw Evans strike appellant once with the shovel, but was not positive whether he struck him more than once. The shovel

was held by the handle with the point down.   Young Grayson did not shoot Evans until after the elder Grayson had been knocked down with the shovel.   There was testimony that after he reached his home, appellant said to his wife:  "We dumped him over; I did not but Materson did."   Appellant had two abrasions on the side of his neck.   These were described by a physician.   The doctor could not say whether these were made by one blow or two.

The evidence adduced by the state suggests antecedent trouble, the nature of which is not disclosed.   Unless there was proof evident of a capital offense which rendered probable the infliction of the death penalty, bail is a matter of right.   Hill v. State, 83 Tex. Crim. Rep. 145; Townley v. State, 87 Tex. Crim. Rep. 252, 220 S. W. 1092; Rogers v. State, 228 S. W. 946; Ex Parte Smith, 23 Tex. Crim. App. 100; Ex Parte Russell, 71 Tex. Crim. Rep. 377; Ex Parte Stephenson, 71 Tex. Crim. Rep. 380; Ex Parte Patterson, 50 Tex. Crim. Rep. 271.

Primarily, the burden was upon the state to establish conditions showing that bail should not be granted.   Vernon's Tex. Crim. Stat., Vol. 2, Art. 6, and collation of authorities thereunder.

The cause of the enmity is undisclosed.   The only arms which the appellant possessed, as disclosed by the evidence, was a pocket-knife, which was not otherwise described, and which was not in law necessarily a deadly weapon and not shown to be such.   The blow struck by him did not kill the deceased and under the statute controlling, the instrument not being deadly, there was no presumption of an intent to kill.   Vernon's Tex. P. C., Art. 1147, p. 716, and authorities collated.

At the time the appellant struck the deceased with a knife, the evidence suggests that deceased was about to seize or had seized a shovel with which the appellant was struck, thus presenting the theory of self-defense.   See Ex Parte Llewellyn, 229 S. W. 326; Ex Parte Dooley, 170 S. W. 303.

Of course, the theory of principals would arise from the facts developed and possibly the theory of conspiracy.   The evidence of conspiracy does not seem to us so cogent as to be proof evident, nor are the facts developed, in our judgment, such as render probable the infliction of the death penalty.

The judgment denying bail is reversed and bail granted in the sum of $7,500.

*Bail granted.*