EX PARTE SAM *S.* VARNADO.

No. 24265. November 24, 1948.

Hon. Owen M. Lord, Judge Presiding.

GRAVES, Judge, dissenting.

*W. J. Baldwin,* of Beaumont, for relator.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

Relator was indicted for the murder with malice of his wife, Geraldine Virginia Varnado. By writ of habeas corpus before the Judge of the Criminal District Court of Jeffereson County, Texas, relator sought bail, which was refused. It is from this order the present appeal is prosecuted. In Cause No. 24,266, relator was indicted for the murder with malice of Lloyd White. Relator also sought bail by habeas proceedings in that cause before the same court. Bail was refused, and from such order an appeal was also prosecuted. The two cases are before us on separate records, but with identical statements of facts.

In the Constitutions of Texas of 1845, and of 1861, the Articles with reference to bail read as follows:

"All prisoners shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident *or the presumption great;* but this provision shall not be so construed as to prohibit bail after indictment found, upon an examination of the evidence by a judge of the supreme or district court, upon the return of a writ of habeas corpus, returnable in the county where the offense is committed." Art. 1, Sec. 9.

In cases by the Supreme Court under the above provision of the Constitution the question of bail called for a discussion and construction of the italicized words.

In Constitutions subsequently adopted the italicized words were omitted, and our present Constitution, Art. 1, Sec. 11, Bill of Rights, reads as follows:

"All prisoners shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident; but this provision shall not be so construed as to prevent bail after indictment found upon examination of the evidence, in such manner as may be prescribed by law."

In Ex parte Foster, 5 Tex. App. 625, decided in 1879, this court realized that the omission of the words "or the presumption great" materially changed the rights of a prisoner in the question of bail. The court then approved two rules of construing what was meant by "when the proof is evident;" and we quote from that opinion as follows.

"The Supreme Court of Pennsylvania have laid down a rule upon this subject which we think worthy of approval. In *The Commonwealth v. Keeper of Prison*, 2 Ashm. Pa. 227, it is said to be a 'safe rule, where a malicious homicide is charged, to refuse bail in all cases where a judge would sustain a capital conviction, if pronounced by a jury, on such evidence of guilt as was exhibited to him on the hearing of the application to admit to bail; and, in instances where the evidence of the Commonwealth is of less efficacy, to admit to bail.' 2 Ashm. Pa., 227; Hurd on Habeas Corpus, 438; *The State v. Summons*, 19 Ohio, 139. Ex parte Bryant, 34 Ala. 270.

"The same idea is tersely and happily expressed by Brickell, C. J., in *Ex parte McAnally*, 53 Ala. 495. He says: 'If the evidence is clear and strong, leading a well-guarded and dispassionate judgment to the conclusion that the offense has been committed; that the accused is the guilty agent; and that he would probably be punished capitally if the law is administered, bail is not a matter of right.' "

In Ex parte Smith, 23 Tex. App. 100, 5 S. W. 99, this court specifically departed from the Pennsylvania rule, stating:

"With respect to the first rule, we are convinced that it is wrong, and should no longer be recognized as a guide." Later in the opinion it was stated:

"With regard to the second rule, it is not, as we can perceive, objectionable."

Since the opinion in Ex parte Smith (supra) the rule seems never to have been departed from, that if the evidence is clear and strong, leading a well-guarded and dispassionate judgment to the conclusion that the offense has been committed; that the accused is the guilty agent, and that he would probably be punished capitally if the law is properly administered, bail should be refused, otherwise bail should be granted. See Ex parte Evers, 29 Tex. App. 539, 16 S. W. 343; Ex parte Russell, 71 Tex. Cr. R. 377, 160 S. W. 75; Ex parte Stephenson, 71 Tex. Cr. R. 380, 160 S. W. 77; Ex parte Sapp, 77 Tex. Cr. R. 400, 179 S. W. 109; Ex parte Feray, 102 Tex. Cr. R. 645, 279 S. W. 470; Ex parte Green, 102 Tex. Cr. R. 542, 279 S. W. 471; Ex parte Grayson, 104 Tex. Cr. R. 365, 284 S. W. 552; Ex parte Powell, 107 Tex. Cr. R. 648, 298 S. W. 575; Ex parte Pringle, 115 Tex. Cr. R. 528, 27 S. W. (2d) 167; Ex parte Perkins, 118 Tex. Cr. R. 178, 40 S. W. (2d) 123; Ex parte Goode, 123 Tex. Cr. R. 492, 59 S. W. (2d) 841; Ex parte Kennedy, 149 Tex. Cr. R. 1,

190 S. W. (2d) 825; Ex parte Suger, 149 Tex. Cr. R. 133, 192 S. W. (2d) 149.

It is sufficient to state the following facts generally; both White and relator's wife were killed by relator on the night of September 29, 1948, at White's studio, each of them having been shot three times. Relator was a photographer; his wife worked with him in his studio. He was drafted into the Army in 1941. He was advised by letter while in the Army that his wife was untrue to him, but the party then involved was not White. After relator's discharge from the Army he seems to have satisfied himself that his wife had been untrue to him, and brought suit for divorce, but was later reconciled on her promise to be true to him thereafter. He thereby condoned her unfaithfulness and they resumed their martial relations. About two and a half years before this killing relator hired White in relator's photograph business, and at first put him on the road, but later put him to work in relator's studio at Beaumont where relator's wife also worked. Sometime prior to September 23d relator's wife brought suit against him for divorce, and on the date mentioned relator signed papers agreeing to the divorce and a division of the property. On this same day relator talked to two of his relatives, advising them that he had agreed to the divorce; they then for the first time told him of separate acts between his wife and White which showed, or strongly intimated, improper relations between them. Relator also had a business in Texas City, and remained there until the 29th of September. On this date he talked to Mr. Broce about some business. Relator seemed much worried over his family trouble, was crying, and kept reverting to such trouble, and during the conversation told Mr. Broce there was another man involved and that he would know what to do if it were not for his children, but on their account he did not know what to do. White had quit working for relator and was operating a studio of his own. Relator returned to Beaumont and learned that his wife was working at White's studio. Relator bought a pistol because he didn't know whether he was going to have trouble with White. Relator went to White's studio and talked to his (relator's) wife, who refused to tell him where White was, but said he was out of town. Relator left the studio, but later drove back and saw his wife, and shortly White entered and kissed Mrs. Varnado. Relator followed him in and the shooting followed, relator claiming that White started towards him,— "lunged at him," and that relator pulled his pistol and started shooting, resulting in the instant death of both White and Mrs. Varnado. After relator signed the papers for divorce on the

23d of September a decree of divorce was entered but he claimed not to have known at the time of the killing that the judgment was final.

It is not to be understood that it is our intention to in any way intimate what the result of the final trial should be, or how it should be conducted. That is a question which would turn upon the evidence upon the final trial and the finding of the jury under proper instructions from the court.

The general statement of the evidence is, as it necessarily must be, based upon the record now before us. All we can properly say is that, giving effect to the principles of law governing, the facts now before us lead us to the conclusion that bail should not have been denied.

The judgment in this Cause No. 24,265, wherein relator is charged with killing his wife, is reversed and bail granted in the sum of $12,500.00.

GRAVES, Judge, (dissenting).

I do not agree to the granting of bail in this cause. The testimony shows a killing of relator's divorced wife, and the only reason that could be given therefor was that she was found by relator in the act of kissing Mr. White, whereupon relator shot Mr. White three times and then shot his ex-wife three times, killing both of them. The woman was shot in the right eyebrow, shot in the back at the left shoulder blade, and shot in the abdomen about one inch from the naval. Mr. White was shot in the head, in the upper part of the left forehead, in the back at the shoulder, and shot in the right chest at the lower part of the ribs.

In the relator's testimony herein he says that while White and his ex-wife were kissing each other in Mr. White's studio, she saw the relator approaching and pointed her finger at him; that White lunged at him and relator went to shooting; that his wife got in the way and he fired six or seven shots from his pistol which he had recently purchased. Nowhere does he say that he accidentally shot his wife three times.

I recognize the fact that he might plead and a careful trial court would probably charge the jury on self-defense, as well as murder without malice in the slaying of White, but surely he could not plead either matter in the case of the woman.

The Constitution of Texas says in Section 11 of Article I that "all prisoners shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident." This phrase has been carried into our statutes with the substitution of the word "where" for the word "when". See Art. 5, C. C. P. Again, the phrase "capital offenses" has been defined in Art. 47, P. C., as follows:

"An offense is an act or omission forbidden by positive law, and to which is annexed, on conviction, any punishment prescribed by this Code. An offense which may—not must—be punishable by death or by confinement in the penitentiary is a felony; every other offense is a misdemeanor. Felonies are either capital or not capital. An offense for which the highest penalty is death is a capital felony. Offenses are divided into felonies and misdemeanors."

As is shown by Judge Hawkins in his opinion herein, the phrase "when the proof is evident" has been construed by this court many times to mean that upon a trial a cool and dispassionate jury would probable inflict a death penalty, thus causing this court to guess or speculate on what a jury would do, a matter fraught with many difficulties and contradictions, as has been often shown by variant verdicts in many cases with practically the same proof brought before this court. While I express dissatisfaction with this court-made law, I recognize its antiquity as well as its utility, and do not say that this court should return to the rule that would paraphrase "when the proof is evident" into the meaning of such proof as that this court would uphold a verdict of death. I am not dissenting from a holding of the time-worn precedent, but I do dissent from the allowance of any bond for the killing of this woman. The record shows her to have married relator at the age of seventeen years; it shows her to have been a wayward young woman; three times had she been untrue to him, so relator says, and each time he had forgiven her and resumed relations with her. She had borne him two children and they had agreed to their custody in the event of a divorce. He had signed a waiver to her divorce proceedings and the divorce had been granted, although he claimed not to have known that such had been granted. He had seen both her and White before on the day of the killing, and she had refused to come back to him or to be seen out with him. She did nothing at the time of her death save to point her finger at him, and he shot her three times and left both bodies lying on the floor.

I confess that no one, unless he can see into the future, can tell what a jury will do under these circumstances. I can only say that it is my opinion that bail was properly refused in this case by the trial court.

For the killing of Mr. White, there is probably some extenuating circumstances, but for the killing of this unarmed woman there are none, and the penalty therefor may—not must—be death.

I therefore dissent in this cause.