**Ex parte Sara Bond CLARK.**

**No. 04–82–00146–CR.**

Court of Appeals of Texas,
San Antonio.

May 26, 1982.

Fred Rodriguez, San Antonio, for appellant.

Bill White, Dist. Atty., Alan E. Battaglia, Asst. Dist. Atty., San Antonio, for appellee.

Before ESQUIVEL, CLARK and BASKIN, JJ.

## OPINION

CLARK, Justice.

Appellant is charged in two causes with capital murder and attempted capital murder. After the trial court set bail at $150,000.00 in each cause, appellant sought a reduction of bail by application for writ of habeas corpus. This appeal is taken from the trial court's denial of relief. Appellant filed a pauper's oath to secure a record of the proceedings below for purposes of this appeal.

At a hearing below, the State relied upon the indictments and offered no testimony. Appellant testified that she had resided in Port Aransas, Texas, for approximately a year and a half before traveling to San Antonio and being arrested, and that she owned no assets except a 1971 automobile worth, at most, $400.00. She had worked as a waitress in Port Aransas before coming to San Antonio, and she had previously worked as a dispatcher for the Port Aransas Police Department. Appellant testified that she would be able to obtain employment as a waitress in Port Aransas if she were released on bond, but that she had no

money or other assets except her automobile which might be used to obtain a bond. Appellant stated that before living in Port Aransas she had lived in Charlotte, North Carolina for approximately two and one-half years, in Dallas for a year, and in Houston for eight years. Appellant testified that her father lives in Port Aransas, and that he owns an unencumbered condominium worth approximately $50,000.00, which he is willing to use as security for a bond for appellant.

Appellant's testimony also reflects that her place of residence in Port Aransas was a rented trailer and that during the four days she was in San Antonio prior to her arrest, she was working as a prostitute. Appellant is also under indictment in Nueces County and has made no attempt to make the $40,000.00 bond set in that cause.

Since the State chose not to offer any evidence except the indictments and objected, successfully, to most of the efforts of appellant's attorney to develop facts surrounding the commission of the offenses, the record contains little evidence of appellant's role in the criminal activity in question. The State's lead counsel in the cause, called as a witness by appellant, testified that appellant is charged as an accomplice or co-conspirator. The State's attorney testified in conclusory terms that appellant "set up" the victims and conspired with her co-defendant in that regard, but did not shoot anyone. The State's attorney also testified that appellant has no known prior felony convictions and no history of complying or not complying with bond conditions because she has never made a bond before.

■ The amount of bail to be required of an accused is governed by the familiar provisions of Tex.Code Crim.Pro.Ann. art. 17.15 (Vernon 1977).[1] The burden of proof is

1. The amount of bail to be required in any case is to be regulated by the court, judge, magistrate or officer taking the bail; they are to be governed in the exercise of this discretion by the Constitution and by the following rules:
   (1) the bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with;
   (2) the power to require bail is not to be so used as to make it an instrument of oppression;
   (3) the nature of the offense and the circumstances under which it was committed are to be considered.
   (4) the ability to make bail is to be regarded, and proof may be taken upon this point.

upon the person seeking a reduction of bail to show that the bail set is excessive. *Ex parte Rodriguez*, 595 S.W.2d 549 (Tex.Cr. App.1980). Among the factors to be considered under art. 17.15 are "[t]he nature of the offense and the circumstances under which it was committed." The nature of the offenses is shown here by the indictments, which also establish probable cause to try appellant for the crimes alleged therein. *Ex parte Vasquez*, 558 S.W.2d 477 (Tex.Cr.App.1977); but the record before us sheds little light upon the circumstances under which the offenses were committed.

■ While appellant is shown to have lived in three cities in Texas and one in North Carolina, her shortest period of residence in any of the four places was one year, and the longest was eight years. And although she admitted being engaged in prostitution in San Antonio for four days prior to her arrest on the charges now pending against her, the record before us does not indicate that she has any prior criminal convictions. The State's almost total success in excluding evidence concerning the appellant's role in the crime inures to the appellant's benefit on this appeal; therefore, we are compelled to conclude that on the limited record before us appellant has met her burden of showing that the bail set is unnecessarily high. In determining the amount of bail to be required, however, we are mindful that the offenses charged are among the gravest crimes defined in our criminal laws, and that they carry correspondingly severe penalties, even though appellant is charged as a co-conspirator or accomplice and not as the person who pulled the trigger.

Taking into consideration the entire record before us, and the requirements of art. 17.15, we conclude that bail of $150,000.00 is excessive in each of the two pending cases

and accordingly order appellant's bail reduced and set at $50,000.00 in each case.[2]

2. We are not persuaded that this court should be guided in its determination by the "bond schedule" memorandum admitted into evidence and identified as having been "agreed to" on September 15, 1980, by the criminal district judges of Bexar County. Appellant urges us to reduce her bail in the two cases pending against her in Bexar County to $20,000.00 on the capital murder charge, and $15,000.00 on the attempted capital murder charge, both of which amounts are consistent with the 1980 memorandum. Appellant does not suggest that the memorandum is binding upon any court, and the record reflects only that it is "a guide that the judges use from which they can deviate depending on the circumstances."