**Ex parte Charles Ray McDONALD.**

**No. 04-93-00056-CR.**

Court of Appeals of Texas,
San Antonio.

April 22, 1993.

Michael Bernard, San Antonio, for appellant.

Steven C. Hilbig, Crim. Dist. Atty., Patrick Hancock, Alan E. Battaglia, Asst. Crim. Dist. Attys., San Antonio, for appellee.

Before CHAPA, BIERY and GARCIA, JJ.

## OPINION

PER CURIAM.

This is an appeal from the denial of habeas corpus relief. Appellant, indicted for capital murder, challenged the $1,000,000 pretrial bail amount as being excessive. Following a hearing the court did not reduce the bail, denying the relief sought by appellant.

In three points of error appellant contends the bail is excessive and the court abused its discretion by refusing to lower the amount of bail required.[1]

### I. Bail in general.

First, we review the rights of an accused to bail and the nature and purpose of bail.

"All prisoners shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident; but this provi-

---

1. Point of error one asserts the bail amount is excessive in violation of arts. 1.07, 1.09, and 17.15 of the Texas Code of Criminal Procedure. Point of error two complains of excessive bail under the eighth and fourteenth amendments to the United States Constitution. Point of error three maintains the bail is excessive under art. I, §§ 11 and 13, of the Texas Constitution.

sion shall not be so construed as to prevent bail after indictment found upon examination of the evidence, in such manner as may be prescribed by law." TEX. CONST. art. I, § 11 and TEX.CODE CRIM.PROC.ANN. art. 1.07.[2]

The interpretive commentary to article I, section 11, of the Texas Constitution, authored by Professor A.J. Thomas, Jr., and Ann Van Wynen Thomas, states:

> Bail functions as a complement to the Anglo–American presumption of innocence by permitting a person charged with a criminal offense to regain his liberty with some assurance of his presence at the trial, by requiring him to give security, subject to forfeiture, if he fails to appear and answer before the proper court on the accusation brought against him.
>
> On the supposition that it was not unreasonable to believe that if punishment could not exceed in severity the forfeiture of a large sum of money, it became usual at common law to take security sufficient to assure the attendance of the accused in misdemeanor cases; responsible parties, often friends of the accused, agreeing that a sum of money should be levied from certain of their properties should he make default. However, in felonies the privilege of giving bail was not generally permitted, particularly where there was strong evidence of guilt, or in a capital offense after indictment. As to the latter it was thought that a man subject to the most extreme punishment, would not be likely to appear at a trial to suffer judgment for a mere monetary consideration.
>
> Section 11 incorporates much of the common law on this subject, but at the same time it is more liberal. It recognizes the right to bail by sufficient securities in all criminal offenses with the exception of a capital offense when the proof is evident of commission thereof which renders possible the imposition of the death penalty. *Ex parte Tindall,* 111 Tex.Cr.R. 444, 15 S.W.2d 24 (1929).

This constitutional provision does not mean that bail will be refused simply because a capital offense is involved. *Ex parte Russell,* 71 Tex.Cr.R. 377, 160 S.W. 75 (1913). There must in addition be proof evident of a capital offense before bail can be refused. In defining "proof evident" it has been asserted that "bail is a matter of right, unless the evidence is clear and strong, leading a well-guarded and dispassionate judgment to the conclusion that an offense has been committed, that the accused is the guilty agent, and that he would probably be punished capitally if the law is administered." *Ex parte Donohoe,* 112 Tex. Cr.R. 124, 14 S.W.2d 848 (1929).

The Texas Constitution by express words permits bail after indictment which is not deemed to be proof that the accused is guilty of a capital crime or one in which the proof is evident thereof. *Ex parte Newman,* 38 Tex.Cr.R. 164, 41 S.W. 628 (1897). The test of non-bailable offense is a capital offense with proof evident, and, either before or after the indictment, the burden is upon the state to show that by proof evident the accused is guilty of such an offense for which the death penalty will probably be inflicted. If such is demonstrated, the accused is not entitled to bail. *Ex parte Tindall, supra; Ex parte Newman, supra.*

TEX. CONST. art. I, § 11 interp. commentary (Vernon 1984).

"Excessive bail shall not be required...." U.S. CONST. amend. VIII; TEX. CONST. art. I, § 13; and TEX.CODE CRIM. PROC.ANN. art. 1.09.

The constitutional provision forbidding excessive bail can be traced to the English Declaration of Rights of 1689. TEX. CONST. art. I, § 13 interp. commentary (Vernon 1984). "The object of prohibiting excessive bail was to prevent recurrence of certain instances during the arbitrary Stuart period in England, when a demand for enormous bail was often made against persons

---

**2.** Article I, section 11a, of the Texas Constitution provides for the denial of pretrial bail in other situations not applicable to this case.

offensive to the court, and when such persons failed to procure this, they were incarcerated." *Id.*

"If bail is excessive then the right to bail extended by Section 11 is effectively nullified. On principle, bail should be sufficient only to assure the appearance of the accused at his trial." GEORGE D. BRADEN, THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 47 (1977).

In a federal context the United States Supreme Court discussed bail as follows:

> This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning.
>
> The right to release before trial is conditioned upon the accused's giving adequate assurance that he will stand trial and submit to sentence if found guilty. Like the ancient practice of securing the oaths of responsible persons to stand as sureties for the accused, the modern practice of requiring a bail bond or the deposit of a sum of money subject to forfeiture serves as additional assurance of the presence of an accused. Bail set at a figure higher than an amount reasonably calculated to fulfill this purpose is "excessive" under the Eighth Amendment.

*Stack v. Boyle,* 342 U.S. 1, 4–5, 72 S.Ct. 1, 3, 96 L.Ed. 3 (1951) (citations omitted). In a concurring opinion Justice Jackson, joined by Justice Frankfurter, stated:

> The practice of admission to bail, as it has evolved in Anglo–American law, is not a device for keeping persons in jail upon mere accusation until it is found convenient to give them a trial. On the contrary, the spirit of the procedure is to enable them to stay out of jail until a trial has found them guilty. Without this conditional privilege, even those wrongly accused are punished by a period of imprisonment while awaiting trial and are handicapped in consulting counsel, searching for evidence and witnesses, and preparing a defense. . . .
>
> Admission to bail always involves a risk that the accused will take flight. That is a calculated risk which the law takes as the price of our system of justice. . . .
>
> In allowance of bail, the duty of the judge is to reduce the risk by fixing an amount reasonably calculated to hold the accused available for trial and its consequence. But the judge is not free to make the sky the limit, because the Eighth Amendment to the Constitution says: "Excessive bail shall not be required. . . ."

*Id.* at 7–8, 72 S.Ct. at 5 (Jackson, J., concurring) (citations omitted).

The primary purpose of an appearance bond is to secure the defendant's presence in court for trial. *Ex parte Vance,* 608 S.W.2d 681, 683 (Tex.Crim.App. [Panel Op.] 1980); *Ex parte O'Clare,* 136 Tex.Crim. 123, 124 S.W.2d 141 (1939); *Ex parte Thomas,* 91 Tex.Crim. 49, 237 S.W. 302, 303 (1922). The amount of bail must be high enough to give reasonable assurance that the accused will appear as required, but the amount should not be oppressively high. *Ex parte Charlesworth,* 600 S.W.2d 316, 317 (Tex.Crim.App. [Panel Op.] 1980); TEX.CODE CRIM.PROC.ANN. art. 17.15(1), (2). The amount of bail should not be fixed at a sum that would be oppressive or result in a denial of bail, but should be fixed at an amount that will insure the presence of the defendant to answer to the indictment. *Ex parte Mathews,* 151 Tex. Crim. 60, 204 S.W.2d 992 (1947).

The Texas Legislature has provided guidelines for determining bail:

> The amount of bail to be required in any case is to be regulated by the court, judge, magistrate or officer taking the bail; they are to be governed in the exercise of this discretion by the Constitution and by the following rules:
>
> 1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense may be considered.

TEX.CODE CRIM.PROC.ANN. art. 17.15.

■ When seeking a reduction in bail, the burden is on appellant to show that the bail is excessive. *Ex parte Charlesworth*, 600 S.W.2d at 317. Although the ability to make bail alone does not control the amount of bail, it is to be considered. *Id.* In considering the nature of the offense, it is proper to consider the possible punishment. *Id.*

### II. Bail amounts in capital cases.

This leads us to an examination of bail in capital cases. The following bail amounts have been authorized by the court of criminal appeals in cases involving capital offenses:

*Ludwig v. State*, 812 S.W.2d 323 (Tex. Crim.App.1991)

Capital murder—reduced $1,000,000 bail to $50,000;

*Ex parte Vasquez*, 558 S.W.2d 477 (Tex. Crim.App.1977)

Capital murder—reduced $100,000 bail to $20,000;

*Ex parte Green*, 553 S.W.2d 382 (Tex. Crim.App.1977)

Capital murder—reversed denial of bail and set bail at $25,000;

*Ex parte Cevallos*, 537 S.W.2d 744 (Tex. Crim.App.1976)

Capital murder—reduced $100,000 bail to $25,000;

*Ex parte Wilson*, 527 S.W.2d 310 (Tex. Crim.App.1975)

Capital murder—reversed denial of bail and set bail at $40,000 for one defendant and $20,000 for another defendant;

*Ex parte Sierra*, 514 S.W.2d 760 (Tex. Crim.App.1974)

Two capital murder charges—affirmed bail of $50,000 as not excessive in one case and reversed denial of bail and set bail at $50,000 in the other case;

*Ex parte Forbes*, 474 S.W.2d 690 (Tex. Crim.App.1972)

Murder with malice, a capital offense—reversed denial of bail and set bail at $20,000;

*Ex parte Roberts*, 468 S.W.2d 410 (Tex. Crim.App.1971)

Robbery by firearms, a capital offense, and two assaults with intent to murder—affirmed bail of $75,000 in robbery case and $25,000 each in assault cases as not excessive.

Additionally, the following bail amounts have been approved by courts of appeals in capital cases:

*Ex parte Delk*, 750 S.W.2d 816 (Tex. App.—Tyler 1988, no pet.)

Capital murder—reduced $100,000 bail to $35,000;

*Ex parte Goosby*, 685 S.W.2d 440 (Tex. App.—Houston [1st Dist.] 1985, no pet.)

Four capital murder charges and one attempted capital murder charge—reduced $250,000 bail to $100,000 in each capital murder case and affirmed $25,-000 bail in attempted capital murder case;

*Ex parte Clark*, 635 S.W.2d 202 (Tex. App.—San Antonio 1982, no pet.)

Capital murder and attempted capital murder—reduced $150,000 bail in each case to $50,000.

When reviewing these cases it must be kept in mind that they were decided from two to twenty-two years ago. In *Ex parte Goosby*, decided in 1985, the court of appeals discussed *Ex parte Sierra*, a 1974 case, and *Ex parte Roberts*, a 1971 case, both from the court of criminal appeals. *Ex parte Goosby*, 685 S.W.2d at 442. While finding the $250,000 bail amounts for each of four capital murder cases excessive, and reducing bail to $100,000 in each case, the court of appeals observed, "There has been a substantial decrease in the value of the dollar over these periods of time."

*Id.* Nevertheless, the above-listed cases are instructive on the issue of excessive bail in capital murder cases.

Most recently, the court of criminal appeals addressed pretrial bail in *Ludwig v. State*, 812 S.W.2d 323 (Tex.Crim.App.1991). There, the trial court set bail at $2,000,000 total for two murder cases and one capital murder charge. The court of appeals reduced bail to $1,000,000. The court of criminal appeals found that amount to be excessive and set bail at $50,000. *Id.* at 325.

In *Ludwig*, the court observed that the appellant was a long-time Texas resident with a veterinary practice. He was involved in a child custody proceeding at the time. His ability to make bond was limited. The circumstances of the crime were not developed at the habeas corpus hearing. There was evidence that the appellant had threatened the victims, two of appellant's in-laws, before he allegedly killed them. He threatened his mother-in-law, who felt she would be endangered if appellant were released on bond.

One factor to consider in setting bail is the future safety of a victim of the alleged offense. TEX.CODE CRIM.PROC.ANN. art. 17.-15(5). The court stated, "We are not inclined to read 'victim' in this provision, however, to cover anyone not actually a complainant in the charged offense." *Ludwig v. State*, 812 S.W.2d at 325.

The court examined Chapter 56 of the Code of Criminal Procedure, "Rights of Crime Victims." "[A] close relative of a deceased victim is entitled to ... the right to have the magistrate take the safety of the victim or his family into consideration as an element in fixing the amount of bail for the accused...." TEX.CODE CRIM.PROC. ANN. art. 56.02(a)(2). The court implied that this provision conflicts with article 17.15 in which the future safety of the victim, not the victim's family, could be considered. *Ludwig v. State*, 812 S.W.2d

at 325. *But see Ludwig v. State*, 812 S.W.2d at 325–26 (Miller, J., concurring). The court stated:

We need not resolve this question today, however. For in our view, even assuming appellant's mother-in-law is a "victim" in contemplation of Article 17.05 (sic), and taking that circumstance into account, we cannot agree that $1,000,000 is a reasonable bail amount. See *Ex parte Ivey*, 594 S.W.2d 98 (Tex.Cr.App. 1980) (Bail reduced from $250,000.00 to $50,000.00, even though there was testimony the applicant would pose a danger to a potential witness in his prosecution).

*Ludwig v. State*, 812 S.W.2d at 325. The court expressly took the safety of the mother-in-law into account in determining the $1,000,000 bail was excessive, but the opinion does not indicate whether the court took that factor into account in setting the $50,000 bail.

Concerning the $1,000,000 bail amount, the court also commented, "[T]his Court has yet to condone a bail amount even approaching seven figures, even in a capital case." *Id.*

### III. Facts from habeas corpus hearing in this case.

Turning to the case before us, the evidence presented at the writ hearing showed that appellant has been indicted for capital murder, which is punishable by a life sentence or the death penalty.[3] Originally, appellant was charged with murder, and bail was set at $1,000,000 for that offense. The murder indictment was dismissed and appellant was indicted for capital murder, with bail again set at $1,000,000. The record does not show who set the $1,000,000 bail. Appellant seeks a reduction in bail to $20,000.

The victim in this case is appellant's ex-wife. The indictment alleges that appellant intentionally caused her death by cutting

---

**3.** Although appellant has been indicted for capital murder, the State did not seek to have bail denied under article I, section 11 of the Texas Constitution by presenting clear and strong evidence, leading a well-guarded and dispassionate judgment to the conclusion that the offense of

capital murder has been committed; that the accused is the guilty party; and that the accused will not only be convicted, but that the jury will return findings which will require a sentence of death. *Ex parte Alexander*, 608 S.W.2d 928, 930 (Tex.Crim.App. [Panel Op.] 1980).

her with a knife in the course of committing and attempting to commit kidnapping of the victim. But, the facts surrounding the offense were not developed at the hearing. *Cf. Ludwig v. State,* 812 S.W.2d 323, 325 (Tex.Crim.App.1991); *Ex parte Clark,* 635 S.W.2d 202, 203 (Tex.App.—San Antonio 1982, no pet.).

Appellant turned himself in to the police before they knew an offense had been committed. *Cf. Ex parte Hellenguard,* 622 S.W.2d 875 (Tex.Crim.App. [Panel Op.] 1981) (bail reduced in murder case from $100,000 to $25,000 where defendant voluntarily surrendered to Sheriff); *Ex parte Walton,* 583 S.W.2d 786 (Tex.Crim.App. [Panel Op.] 1979) (bail reduced in murder case from $25,000 to $15,000 where defendant surrendered voluntarily to police).

Appellant is fifty-two years old and had been a resident of San Antonio for fifty years. Appellant successfully completed probation for a burglary he committed when he was seventeen years old. Prior to his arrest, appellant was living with his mother, who is in bad health and relied on appellant to take care of her. Appellant worked at two jobs as a salesman for portrait studios and owned a used book and record store. After his arrest, appellant sold the inventory of his store for $1000.

Appellant has $850 in the property room and $300 in the commissary. He has no checking or savings account. He does not own any stocks, bonds, mutual funds or real estate. Appellant testified that a bond fee would be ten percent. He said he could not raise $100,000 to make the $1,000,000 bail.

Appellant testified he might be able to get a friend to put up some property. Appellant's friend has a home that would sell for between $50,000 and $100,000. His friend said he would try to help appellant if he could and at one time told appellant that was a possibility. After being told by his attorney during redirect examination that a person may not borrow against their homestead, appellant said his friend has another

house and that his friend had put up the property as a bail bond or "something like that" for the friend's son. Appellant said if he were able to make bail, he would appear in court when required.

Appellant's mother testified that she did not have $100,000 or $10,000. She said that if appellant were released on bond he could live with her again.

An acquaintance of appellant testified that appellant was reliable and she thought appellant would appear in court if he were out on bond.

The deceased's son testified that throughout the marriage of his mother and appellant he was afraid of appellant. The son described an argument between his mother and appellant in December 1987 when appellant held a gun and threatened to hurt anyone who got in his way. The son also told of an episode in May 1987 when appellant kicked him, knocked him to the ground, and slapped his face, requiring the son to go the hospital. The son testified that he would feel threatened if appellant were to be released on bond.

## IV. Conclusion.

In the present case the State agrees that the $1,000,000 bail amount is excessive based on *Ludwig v. State.* At oral argument the State requested bail be set at $300,000. However, the State candidly admitted it was unaware of any case in which the court of criminal appeals has approved a $300,000 bail amount, nor have we found any such case.[4] *Cf. Ex parte Goosby,* 685 S.W.2d 440, 441 (Tex.App.—Houston [1st Dist.] 1985, no pet.) (State did not direct court of appeals to any case upholding bail as high as $250,000 for capital murder).

As we stated in *Ex parte Clark,* 635 S.W.2d at 204, we are mindful that the offense charged is among the gravest crimes defined in our criminal law and that it carries a correspondingly severe penalty. We are also mindful of the rights guaranteed appellant under the Texas Constitu-

---

4. This does not mean that a $300,000 bail or even a $1,000,000 bail is always excessive and can never be reasonable. Each case must be evaluated upon its unique facts. But, it would be an unusual case which would justify such a high bail amount.

tion, our responsibilities under the Texas Constitution, and our obligation to uphold the Texas Constitution and adhere to its principles.

■ Taking into account the Texas Constitutional provisions concerning bail, articles 1.07 and 1.09 of the Texas Code of Criminal Procedure, the factors enumerated in article 17.15, case law, and the evidence adduced at the writ hearing, we conclude that $1,000,000 bail is excessive in this case.

The $1,000,000 bail is oppressively high because it is far more than is necessary to provide reasonable assurance that appellant will appear in court. Appellant voluntarily surrendered. The evidence showed that if released on bond appellant will live with his mother, who had relied on appellant to care of her before his arrest. Appellant has limited resources with which to make bail. We note the absence of facts surrounding the offense. As we previously discussed in this opinion the court of criminal appeals has not clearly indicated whether the future safety of someone other than the complainant may be taken into account in setting bail. However, we find the bail is excessive even considering this circumstance, as the court did in *Ludwig v. State.*

Points of error one and three are sustained.[5] The order denying habeas corpus relief is reversed. The relief sought is granted to the extent that appellant's bail is ordered reduced and set at $75,000. Of course, if appellant is released on bond, the trial court may impose conditions authorized by law.

---

5. Because we find the bail excessive under the Texas Constitution and the Texas Code of Criminal Procedure, we do not address appellant's second point of error dealing with the eighth and fourteenth amendments to the United States Constitution.