Opinion issued January 9, 2007











In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00466-CR

____________


TRAVIS LEE SHERMAN


V.


THE STATE OF TEXAS






On Appeal from the 262nd Judicial District Court

Harris County, Texas 

Trial Court Cause No. 1066355






MEMORANDUM OPINION ON MOTION FOR REHEARING

 Appellant, Travis Lee Sherman, requests that we rehear his appeal. We deny
appellant's motion for rehearing, but we withdraw our opinion and judgment that
issued October 30, 2006. We substitute the following opinion for the October 30,
2006 opinion.

 Appellant, Travis Lee Sherman, appeals the trial court's judgment setting his
pretrial bail at an aggregate of $280,000 for four alleged felony offenses. We affirm.

 Pursuant to a homicide investigation, authorities arrested appellant on January
7, 2006. The State charged appellant with the murder of Patricia Kay Evans on
January 7, 2006, case number 1052876, and possession of a controlled substance on
January 7, 2006, case number 1052874. The magistrate set appellant's bond at
$30,000 for the murder charge and $2,000 for the possession of a controlled
substance charge. A bonding company posted appellant's bond in these two cases,
and the State released him. 

 On January 26, 2006, appellant took his car to a locksmith to have the locks
changed. In appellant's car, locksmith employees found what they believed to be
traces of narcotics and called the police. Police rearrested appellant, leading to the
State charging appellant with committing, on January 26, 2006, two additional
offenses, possession of cocaine weighing less than one gram, case number 1055323,
and possession of oxycodone weighing more than one gram and less than four grams,
case number 1055324. The trial court set bail for these two offenses at "no bail" and
revoked the bail on the murder and original cocaine charge.

 Appellant applied to the trial court for habeas corpus relief, asserting that the
setting of bail at "no bond" for the four alleged offenses is excessive and is being
used by the State as an instrument of oppression in violation of his right to reasonable
bail. Appellant requested the trial court set his total bail at $100,000. On May 3,
2006, the trial court changed the bail to $250,000 for the murder charge and $10,000
each for the three possession of controlled substance charges. 

Issues

 This appeal followed. In two issues, appellant appeals the trial court's
judgment, asserting that the trial court abused its discretion in not setting his total bail
at $100,000, and in setting excessive bail in violation of U.S. Constitution
amendment VIII; Texas Constitution, article I, sections 11 and 13; and Texas Code
of Criminal Procedure articles 1.07 and 1.09 (Vernon 2005).

Evidence at the Habeas Hearing

1. Appellant's Evidence

 In support of his assertion that a bail of "no bond" was unreasonable, appellant
presented the testimony of his son, Keith Sherman; a neighbor, Michael Scott; a
friend, Greg Ohmer; and a bail bondsman, Andy Glenn.


 a. Appellant's Son, Keith Sherman

Keith Sherman testified that appellant, his father, started working for Spring
Independent School District in 1970 as an English teacher, progressing in his career
to a high school counselor, high school assistant principal, and assistant director of
transportation when he retired in 2000. Appellant currently resides with his friend,
Greg Ohmer in Magnolia. Before that, he lived in an apartment. If allowed out on
bond, appellant has ties to the community that would keep him here, including two
granddaughters and good friends in the educational community. Before appellant's
arrest in January, appellant had never been charged with a felony or a misdemeanor,
except, perhaps, a traffic ticket. After his arrest in January, appellant made bond and
appeared in court as required by the bond. Keith does not think appellant poses a
threat to anyone in society.

Appellant divorced three and one-half years ago, but he retained ownership of
the home he lived in before the divorce. Since appellant's re-arrest, Keith has been
responsible for helping appellant manage his funds. About five years ago, appellant
inherited a sizable amount of money. At one time, Keith's mother believed appellant
had about a million dollars in assets. However, after Keith examined the records back
to the time of the inheritance, its value was more in the area of $400,000, of which
about $120,000 remains. Keith has discussed with Andy Glenn posting a bond
should the trial court set one. If the court set the total bond at $100,000, appellant
could make it. Because of the collateral situation, such a bond would be a huge strain
on appellant's assets, leaving appellant little or no assets to support his defense. 

b. Appellant's Friends: Michael Scott and Greg Ohmer

Michael Scott testified that in March 2006, he met appellant when appellant
moved into the property owned by Greg Ohmer. He has met appellant on five or six
occasions, and he "seemed like a nice enough fellow." Scott has never known
appellant to use cocaine, and did not see him in possession of crack cocaine when he
followed him to the locksmith shop or thereafter when they went to eat. 

Greg Ohmer testified that he knew appellant as a friend for three to four years,
and that appellant lived with Ohmer for three months after his arrest for the murder
case. Ohmer also spent time with appellant in appellant's apartment before appellant
came to live with Ohmer. He never saw appellant possess or use drugs and does not
think appellant has a drug problem. Ohmer saw appellant with Pat Evans, for whom
appellant cared a lot, and around whom he never appeared threatening. According
to Ohmer, Evans had a drug problem, and appellant tried to help her deal with it. 
Evans drove appellant's Honda automobile, and appellant drove his truck.

Both Scott and Ohmer testified they did not think appellant would pose a threat
to society if he were released on bond.

c. Bail Bondsman

Andy Glenn of Andy Glenn Bail Bondsman testified that his company posted
the original $30,000 and $2,000 bonds for appellant. Pursuant to the bonds, there
were conditions placed on appellant to appear in court. Appellant complied with
those conditions, as well as Glenn's conditions that appellant report to Glenn's office
Wednesdays and Saturdays to sign in. The information appellant gave Glenn verified
his residential history. Glenn had no information indicating that appellant is a flight
risk. Glenn talked to Keith Sherman about posting another bond, and, in his opinion,
appellant has sufficient assets to make a $100,000 bond. Glenn acknowledged that
his opinion about the amount of bond that appellant could make is based solely on 
appellant's son's statements and only those assets that have been disclosed to Glenn. 
Glenn did not talk to appellant's former spouse or appellant's co-heirs, his cousins,
about appellant's assets.

2. State's Evidence

 a. State's Documents

 The State introduced each of the defendant's indictments and the return of the
writ into evidence. The indictments showed that they were filed with the district clerk
on March 3, 2006. The State also introduced a certified copy of the results of a drug
test showing that appellant tested positive for opiates on January 24, 2006. Appellant 
did not object to the admission of the test results, but requested that the court take
judicial notice that appellant had a prescription for the opiates. The court denied
appellant's request and admitted the State's report. Finally, the State requested that
the court take judicial notice that appellant was out on bond when the new offenses
were allegedly committed, which the court did. 

 b. Deputy Detective Clegg

 Harris County Deputy Detective Clegg testified that he found the cocaine
mentioned in the indictment for case number 1052874 in appellant's apartment, along
with a few items belonging to Evans. Evans's husband and appellant's wife (1)
provided Clegg with sworn statements saying that appellant paid Evans in money and
crack cocaine for sexual favors. 

 Clegg further testified that about three weeks after the State released appellant
on bond on the murder and drug charge, appellant was arrested in Tomball on two
possession of controlled substance charges, one of which was for cocaine possession. 
Clegg had concerns about appellant's association with prostitutes. Clegg believes
that if appellant were released on bond again, he would endanger the community by
committing further offenses. 

Trial Court's Decision

 The trial court announced from the bench that it set appellant's bond at
$250,000. The written judgment, signed on May 3, 2006, ordered bail for the murder
charge to be $250,000 and bail for each of the drug possession charges to be $10,000,
a total of $280,000.

Standard of Review

 The standard for reviewing bail settings is whether the trial court abused its
discretion. See Ex parte Rubac, 611 S.W.2d 848, 849, 850 (Tex. Crim. App. 1981)
(holding that trial court abused its discretion in setting appeal bond at twice the
amount of pretrial bond); Ex parte Ruiz, 129 S.W.3d 751, 753 (Tex. App.--Houston
[1st Dist.] 2004, no pet.). In the exercise of its discretion, a trial court should
consider the following factors in setting a defendant's bail:

 1. The bail shall be sufficiently high to give reasonable assurance that
the undertaking will be complied with.


 2. The power to require bail is not to be so used as to make it an
instrument of oppression.


 3. The nature of the offense and the circumstances under which it was
committed are to be considered.


 4. The ability to make bail is to be regarded, and proof may be taken
upon this point.


 5. The future safety of a victim of the alleged offense and the
community shall be considered.


Tex. Code Crim. Proc. Ann. art. 17.15 (Vernon 2005); see Ludwig v. State, 812
S.W.2d 323, 324 (Tex. Crim. App. 1991) (noting that court is "to be governed in the
exercise of [its] discretion by the Constitution and by the [article 17.15 factors]"). 
The burden of proof is upon a defendant who claims bail is excessive. Rubac, 611
S.W.2d at 849; Ex parte Martinez-Velasco, 666 S.W.2d 613, 614 (Tex.
App.--Houston [1st Dist.] 1984, no pet.). 

The primary purpose for setting bond is to secure the presence of the defendant
in court at his trial. Ex parte Vasquez, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977);
Ex parte Bonilla, 742 S.W.2d 743, 744 (Tex. App.--Houston [1st Dist.] 1987, no
pet.). The amount of bail should be set sufficiently high to give reasonable assurance
that the accused will comply with the undertaking, but should not be set so high as
to be an instrument of oppression. Ex parte Bufkin, 553 S.W.2d 116, 118 (Tex. Crim.
App. 1977); Ex parte Willman, 695 S.W.2d 752, 753 (Tex. App.--Houston [1st Dist.]
1985, no pet.). Courts should also consider the defendant's work record, family ties,
residency, criminal record, and conformity with previous bond conditions. See
Rubac, 611 S.W.2d at 849.



Discussion

1. Nature of the Offense

 a. Judicial Notice

 In discussing the nature of the offense, appellant maintains that the trial court
abused its discretion by complying with the State's request to take judicial notice that
appellant's new offenses (January 26th) occurred while he was out on bond for the
previous offenses. Appellant contends that even though Detective Clegg stated that
appellant was arrested about three weeks after the charges he had filed against
appellant, the State did not proffer any evidence that connected the arrests to the
January 26th allegations. Appellant asserts that because the indictments in each of
the offenses were not filed until March 2nd and because the statute of limitations for
drug offenses is three years, the alleged January 26th offenses may have occurred
before the January 7th offenses. Appellant contends that the absence of "credible
evidence" demonstrating that appellant was out on bond when the January 26th
offenses were committed, demonstrates that the trial court abused its discretion. 

 Appellant's judicial admissions in his own application for habeas corpus relief
undermine this argument. Under a part of the application entitled "Circumstances of
the Offenses," appellant acknowledges that he was released on bond after his January
7, 2006 arrest and then recounts:

 On January 26, 2006, [appellant] took [his] vehicle to a locksmith and
requested that the locks be changed. Police were called when employees
of the business found what they believed were traces of narcotics in the
vehicle. . . . Petitioner tested negative for marihuana and cocaine
immediately after his arrest on January 26, 2006.


Based on appellant's application, it was reasonable for the trial court to infer,
especially with no countervailing evidence, that when the police arrested appellant
on January 26, 2006, it was for possessing the trace narcotics the locksmith
employees found in appellant's car on January 26, 2006. Viewing the evidence in a
light most favorable to the trial court's ruling, the trial court did not abuse its
discretion in concluding that appellant's new charged offenses occurred while he was
out on bond for previous offenses.

 b. Nature of the Offense

 In considering the nature of the offense, it is proper to consider the possible
punishment. Vasquez, 558 S.W.2d at 479-80. The murder charge is a first degree
felony offense, carrying a punishment range of five to 99 years or life imprisonment
and a fine not to exceed $10,000. See Tex. Pen. Code Ann. § 12.32(a) (Vernon
2003), Tex. Pen. Code Ann. § 19.02(b)(1) (Vernon 2003). The possession of 1-4
grams of oxycodone is a third degree felony offense, carrying a punishment range of
two to 10 years and a fine not to exceed $10,000. See Tex. Health & Safety Code
Ann. § 481.102(3)(A) (Vernon Supp. 2006), Tex. Health & Safety Code Ann. §
481.115(c) (Vernon 2003); Tex. Pen. Code Ann. § 12.34 (a)-(b) (Vernon 2003). 
The two possession of cocaine, weighing less than 1 gram, charges are state jail
felony offenses, carrying a punishment range of 180 days to two years and a fine not
to exceed $10,000. See Tex. Health & Safety Code Ann. § 481.102(3)(D)
(Vernon Supp. 2006);Tex. Health & Safety Code Ann. § 481.115(b) (Vernon
2003); Tex. Pen. Code Ann. § 12.35 (a)-(b) (Vernon 2003). Thus, if convicted of
all charges, and given concurrent sentences, appellant could be imprisoned for a
maximum of 99 years or life. Appellant would have no possibility for parole for at
least 30 years. See Tex. Gov't Code Ann. § 508.145(d) (Vernon Supp. 2006). If
convicted of murder, the least punishment appellant could receive is five years of
community supervision, assuming the charges were tried to a jury and the jury
recommended community supervision to the judge for five years. Tex. Code Crim.
Proc. Ann. art. 42.12 § 4 (a), (b) (Vernon Supp. 2006).

 The nature of the alleged offenses is serious, carrying substantial penalties. 
Therefore the determination of whether to reduce the bond amount should be
carefully evaluated based on the likelihood of flight upon release. Furthermore, the
evidence that appellant committed the latest possession offenses while on bond for
his previous offenses suggests that a lower bond amount may not pose a sufficient
deterrent to prevent appellant from engaging in criminal acts. We conclude that the
trial court may have reasonably decided that the nature of the offense did not favor
a further bond reduction.

2. Sufficient Bail to Assure Appearance But Not Oppress

Bail set in a particular amount becomes "oppressive" when it is "based on the
'assumption that [the accused cannot] afford bail in that amount and for the express
purpose of forcing [the accused] to remain incarcerated pending [trial].'" Ex parte
McCullough, 993 S.W.2d 836, 837 (Tex. App.--Waco 1999, no pet.) (quoting Ex
parte Harris, 733 S.W.2d 712, 714 (Tex. App.--Austin 1987, no pet.)). 

Here, there was no evidence that the trial court set appellant's bail in an amount
the accused cannot afford for the express purpose of forcing appellant to remain
incarcerated pending bail. First, appellant did not prove that he could not afford bail
of $280,000. Bail bondsman, Andy Glenn, testified that, in his opinion, the highest
bail appellant could make was $100,000. Glenn acknowledged, however, that his
opinion was based solely on the statements of appellant's son and those assets that
had been disclosed to him. Appellant's son testified that under appellant's divorce,
appellant retained the house. Appellant offered no evidence of the value of the house. 
Appellant's application for habeas corpus relief states that appellant owns 12.8 acres
in Freer, Texas. Appellant has put on no evidence of the value of that property. Greg
Ohmer's testimony revealed that appellant owns a Honda and a truck, yet no evidence
was adduced as to their value. Glenn did not testify whether the house, the land in
Freer, Texas, or the vehicles were among those assets disclosed to him. Finally,
appellant, himself, did not tell Glenn about his assets.

Next, to show that the bail set is oppressive, appellant states that bail of
$250,000 for the murder case is substantially above that set in various violent first
degree felony cases. First appellant cites Ludwig, 812 S.W.2d at 325 (bail reduced
from $1,000,000 to $50,000 when accused charged with capital murder of two
individuals). Although there are many similarities between Ludwig and the present
case, several factors in Ludwig favor a lower bond in that case over the present case:
(1) Ludwig had several close relatives, who were long-time Texas citizens and were
willing to sign a bond to assure Ludwig's appearance at trial; (2) Ludwig was
involved in a child custody proceeding in conjunction with a divorce, which would
require Ludwig's presence in the jurisdiction, and (3) Ludwig's ability to make bond
was limited because his assets were frozen by a temporary court order in conjunction
with the divorce action. See id. at 324. 

Next, appellant cites Montalvo v. State, 786 S.W.2d 710 (Tex. Crim. App.
1989), a case in which the San Antonio Court of Appeals had reversed Montalvo's
murder conviction and remanded the case to the trial court. Id. Without discussing
any of the relevant criteria for setting bail, the Court of Criminal Appeals set bail at
$25,000. Id. at 711. Without a basis for comparison of the relevant bail setting
factors, this case is unpersuasive.

In Ex parte Hellenguard, 622 S.W.2d 875 (Tex. Crim. App. 1981), a murder
case, the Court of Criminal Appeals lowered Hellenguard's bail from $100,000 to
$25,000. Id. at 876. While there were aggravating factors in Hellenguard not present
in the case under consideration, such as circumstantial evidence of Hellenguard's
guilt of the underlying offense, and a statement of Hellenguard's intention to flee,
there are also distinguishing factors between Hellenguard and the present case: (1)
Hellenguard turned himself in, whereas appellant was arrested and (2) Hellenguard
was indigent, whereas appellant has significant assets of unestablished value. Id. at
875.

In Ex parte Ivey, 594 S.W.2d 98 (Tex. Crim. App. 1980) the State charged
appellant with the first degree felony offense of aggravated robbery. Id. at 99. The
Court of Criminal Appeals lowered the bail from $250,000 to $50,000. Id. at 100. 
As in Hellenguard there are aggravating factors in Ivey not present in this case, such
as direct evidence of appellant's culpability for the underlying offense, id. at 98, and
that appellant's release would endanger the complaining witness, id., but there are
also distinguishing factors in that (1) the charged offense in this case involves the loss
of life rather than the loss of property, (2) appellant was charged with additional
offenses while on bail; and (3) in this case, there is sketchy information about the
extent of appellant's assets, but even that sketchy information shows substantial
assets.

Appellant cites Ex parte Walton, 583 S.W.2d 786 (Tex. Crim. App. 1979) in
which the Court of Criminal Appeals lowered the bail in a murder case from $25,000
to $15,000. Id. at 787. Factors favoring a lower bail in Walton than in this case
include evidence that: (1) Walton voluntarily surrendered to the police after the
shooting, (2) Walton cooperated with the police to the extent of confessing to
shooting the deceased, and (3) Walton was indigent. Id. Additionally, appellant's
possession of substantial assets and his being charged with additional offenses
allegedly committed while on bail, distinguish this case from Walton as well.

In Ex parte McDonald, 852 S.W.2d 730 (Tex. App.--San Antonio 1993, no
pet.), a capital murder case, the San Antonio Court of Appeals lowered McDonald's
bail from one million dollars to $75,000. Id. at 736. There are distinguishing factors
in McDonald that tend to support a lower bail in that case than in this case: (1)
McDonald turned himself in to police before they knew an offense had been
committed, (2) appellant testified regarding his assets, and (3) appellant testified that
if he were able to make bail he would appear in court when required. Id. at 735. 
There are factors in this case, not present in McDonald, that tend to support a higher
bail in this case than in McDonald, including evidence that appellant has $120,000
cash remaining from an inheritance, evidence that appellant owns real estate and
vehicles of unestablished values, and factors as set out in the discussion of Ivey
above.

Finally, appellant cites Vasquez, a capital murder case in which the Court of
Criminal Appeals lowered the bail from $100,000 to $20,000. Vasquez, 558 S.W.2d
at 480. Vasquez contains factors that would tend to support a lower bail in that case
than in this case, including (1) his testimony that: (a) he did not shoot the decedent
and was not implicated with the apparent trigger man, id. at 479; (b) he had no cash
anywhere; (c) he owned no real estate; and (d) he could not make the $100,000 bond
set; id. at 478, as well as, (2) the trial court finding that Vasquez was a pauper. Id. at
480.

We conclude that by failing to produce evidence regarding known assets, a
house, land, and vehicles, appellant has not demonstrated that the trial court set bail
in an amount higher than appellant could afford or than necessary to assure his
appearance in court, and, thus, appellant has not shown that the trial court's bail
setting is oppressive.



3. Ability to Make Bail

The defendant's financial ability to make bail is another factor to be considered
in determining whether the bond amount is excessive. Appellant's son and the bail
bondsman testified that the largest bond appellant could make is $100,000. In fact,
the bondsman testified that, based on his knowledge of appellant's financial situation,
he would be unwilling to post bond in any amount greater than $100,000 on
appellant's behalf. During cross-examination, however, the State established that the
bondsman's familiarity with appellant's finances was limited to information he was
provided by Keith Sherman. The bondsman did not talk with appellant or other
members of his family, such as his former spouse or his co-heir cousins about
appellant's assets. Additionally, the record contained evidence of a house, 12.8 acres
of land, and two vehicles for which no value was established. When this is added to
evidence that appellant's son was unaware of other facets of appellant's life, the
record is inconclusive regarding appellant's ability to afford the bail. 

4. Safety of the Victim and the Community

In determining the appropriate amount of bond, the future safety of the victim
of the alleged offense and the community is to be considered. Tex. Code Crim.
Proc. Ann. Art. 17.15(5) (Vernon 2005). Appellant presented three witnesses who
testified that if appellant were released on bond, he would not pose a threat to society. 
Furthermore, appellant presented evidence that these indictments represent the first
time he has been accused of criminal offenses other than traffic tickets. 
Contrastingly, the State presented evidence that appellant was under indictment for
four felony offenses, including murder. Additionally, appellant acknowledged that
he was out on bond for murder and possession of illegal drugs when he was re-arrested for two, new drug-possession charges. Further, Detective Clegg testified that
he had concerns that appellant would endanger the community by committing new,
extraneous offenses if released on bond again. Although appellant had not been
charged with a crime before his recent charges, his four charges suggest that the trial
court did not abuse its discretion by concluding that appellant is a risk to the safety
of the community.

5. Other Factors

Information on the indictments shows that appellant is 68 years old. Appellant
produced evidence of a progressively responsible educational career in Harris County
from 1970 until his retirement from the school district in 2000. Appellant has family
ties in The Woodlands, consisting of his son and two granddaughters. Appellant
lived in an apartment in Houston before his arrest on January 7, 2006, and lived in
Magnolia before his re-arrest on January 26, 2006. Appellant offered evidence that
he had no prior criminal record and that he complied with the conditions of his
previous bonds as well as the bonding company's rules that he sign in with them
twice a week.

Conclusion

With evidence in the record that appellant had $120,000 cash on hand, that
appellant possessed several other significant assets of unestablished value, and with
the remaining evidence of appellant's assets called into question by impeachment of
appellant's witnesses, the trial court could have reasonably concluded that appellant
did not show his inability to post a bail higher than $100,000. When the trial court
considered this in conjunction with the serious nature of the offenses charged and the
range of punishment appellant faces for the charged offenses, the trial court could
have reasonably concluded that appellant represents a flight risk, even when weighed
against his work history, ties to the community, and clean criminal record, previous
to the four charges currently pending against him. Additionally, the trial court could
have considered that while out on the $32,000 bail, there was evidence that appellant
committed two drug possession offenses. Considering the totality of the
circumstances surrounding the charged offenses, we cannot say that the trial court
abused its discretion in setting bail at a total of $280,000. We overrule appellant's
issues and affirm the trial court's judgment.

 

 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Alcala and Bland.


Do not publish. Tex. R. App. P. 47.2(b).


1. Detective Clegg apparently did not know or forgot that at this time
appellant was divorced.