IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-09-00422-CR

 

Ex
parte DaRrNell Lee Shields,

 

 

 



From the 19th District
Court

McLennan County, Texas

Trial Court No. 2008-1918-C1A

 



MEMORANDUM  Opinion



 

            Appellant Darrnell Lee
Shields’s first trial on three felony charges ended in a mistrial during the
charge conference, and the State is going to retry him.  Shields’s bail is set at
$500,000.  He filed an application for writ of habeas corpus, alleging that the
$500,000 bail pending retrial was excessive and requesting the trial court to
lower bail to $50,000.  The trial court held a hearing but denied relief. 
Shields appeals, complaining in his first issue that the trial court abused its
discretion in refusing to reduce bail and that the $500,000 bail remains excessive.

            Shields was charged with the
following third-degree felonies:  injury to a child, assault—family violence
(enhanced), and attempted sexual assault.  The State has filed a notice to
enhance punishment to the habitual punishment range of 25 to 99 years, or life,
based on two of Shields’s prior Kansas felony convictions.  See Tex. Pen. Code Ann. § 12.42(d) (Vernon Supp.
2009).

Standard of Review.  We review a trial court’s pretrial
bail determination under an abuse-of-discretion standard.  Ex parte Rubac,
611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981); Ex parte Davis, 147 S.W.3d 546, 548 (Tex. App.—Waco 2004, no pet.).  A habeas applicant bears
the burden of proving that his bail is excessive.  Rubac, 611 S.W.2d at
849; Davis, 147 S.W.3d at 548.

            Bail Factors.  Article 17.15 of the Code of Criminal
Procedure lists five factors to be considered in determining what bail is
appropriate:

1.         The bail shall be
sufficiently high to give reasonable assurance that the undertaking will be
complied with.

 

2.         The power to require bail is
not to be so used as to make it an instrument of oppression.

 

3.         The nature of the offense and
the circumstances under which it was committed are to be considered.

 

4.         The ability to make bail is
to be regarded, and proof may be taken upon this point.

 

5.         The future safety of a victim
of the alleged offense and the community shall be considered.

 

Tex. Code Crim. Proc. Ann. art. 17.15 (Vernon 2005).

 

Other pertinent factors include family
and community ties, work history, length of residence in the county, prior
criminal record, conformity with conditions of prior bonds, and any aggravating
circumstances of the offense.  Rubac, 611 S.W.2d at 849-50; Davis,
147 S.W.3d at 548.  We will review the trial court’s decision in light of the
above factors. 

Sufficiently High to Give Reasonable
Assurance of Appearance. 
“[B]ail should be set high
enough to give reasonable assurance that the defendant will appear at trial.”  Ex
parte McCullough, 993 S.W.2d 836, 837 (Tex. App.—Waco 1999, no pet.)
(quoting Ex parte Brown, 959 S.W.2d 369, 371 (Tex. App.—Fort Worth 1998,
no pet.)).  A defendant’s ties to the community and work history bear on the
adequacy of bail to give reasonable assurance he will appear.  See
McCullough, 993 S.W.2d at 837-38.

            A hearing was held and the
sole witness was Shields.  Before and during his first trial, Kansas had issued
a “blue warrant”[1]
on Shields, making the issue of bond moot at the time, but he said that the hold
has since been lifted.  Shields said that he believed he could make bail in the
amount of $50,000 with a bail bond.  At the time of his pretrial incarceration,
Shields had been in Waco for three months and had worked for two months at
Sanderson Farms.  His grandmother lives in Waco, but Shields was not familiar
with her age, how long she has lived in Waco, or her employment.  He said he could
stay with her if he meets bail.  Shields has otherwise spent his whole life in
Kansas, and the rest of his family (mother, brother, nieces, and nephews) lives
there.  He has four prior Kansas felony convictions, including one for domestic
battery.

            At the hearing, the State asked
the trial court to recall the evidence of the charged offenses from the first
trial.  The State further contends that, in addition to Shields’s ties being in
Kansas and being almost nonexistent in McLennan County, because he has seen all
the State’s evidence, he is a flight risk.  The evidence on this factor weighs against
a low bail amount.

Not So High as to Constitute an
Instrument of Oppression. 
Bail set in a particular
amount becomes “oppressive” when it is “based on the ‘assumption that [the
accused cannot] afford bail in that amount and for the express purpose of
forcing [the accused] to remain incarcerated pending [trial].’”  McCullough,
993 S.W.2d at 837 (quoting Ex parte Harris, 733 S.W.2d 712, 714 (Tex.
App.—Austin 1987, no pet.)).  In considering this factor, we have looked to
bond amounts in other cases.  See Ex parte Emery, 970 S.W.2d 144, 145-46
(Tex. App.—Waco 1998, no pet.);[2]
see also Jenkins v. State, No. 10-05-00147-CR,
2006 WL 348716 (Tex. App.—Waco Feb. 15, 2006, no pet.) (mem. op.) (not
designated for publication) (holding that reduction of bail from $500,000 to
$100,000, instead of to $20,000, on charges of aggravated assault with deadly
weapon, was not abuse of discretion); Ex parte
Parker, 26 S.W.3d 711 (Tex. App.—Waco
2000, no pet.) (trial court did not abuse its discretion in reducing bail from
$75,000 to $50,000 where defendant charged with aggravated sexual assault of child
under 14 years of age).  In its brief, the State concedes that $500,000 is “on
the high side of the range for third degree felonies.”  The
evidence and case law relevant to this factor weigh in favor of a lower bail.

Nature and Circumstances of the Offenses.  Shields is accused of assaulting his former girlfriend
(assault—family violence) and attempting to sexually assault her in front of
her three-year-old son, whom he also allegedly assaulted (injury to a child) during
the same episode.  The State is seeking to have Shields punished as a habitual
felon with a minimum sentence of twenty-five years in prison.  The violent
nature of the alleged offenses—committed while Shields was on parole—suggests
that a high bail amount is appropriate.  See Jenkins, 2006 WL 348716, at
*2.

Ability to Make Bail.  Although a defendant’s ability to make
bail is a factor for consideration, inability to make bail, even to the point
of indigence, does not control over the other factors.  Ex parte
Charlesworth, 600 S.W.2d 316, 317 (Tex. Crim. App. [Panel Op.] 1980); Davis,
147 S.W.3d at 548.  Shields believes he could make bail in the amount of
$50,000.  The evidence on this factor weighs in favor of a lower bail.

Future Safety of the Community.  As noted, Shields is charged with
violent crimes, and the victims reside in the community.  The State posits that
Shields is a flight risk, as explained above.  The evidence and other
information pertinent to this factor tend to support bail in a high amount.

Other Factors.  Other pertinent factors include prior
criminal record, conformity with conditions of prior bonds, and any aggravating
circumstances of the offense.  Rubac, 611 S.W.2d at 849-50; Davis,
147 S.W.3d at 548.  Shields testified that he has four Kansas felony
convictions:  two for possession of a firearm, one for discharge of a firearm,
and one for aggravated assault.  This
weighs in favor of a high bail amount.

A final factor mostly in Shields’s favor
is that he has been jailed since his arrest in July of 2008.  While this is
attributable largely to the Kansas blue warrant and his first trial ending in a
mistrial, a lengthy pretrial detention should not be a substitute for a trial—the
purpose of our constitutional and statutory law on bail is to guarantee that it
is not.  Ex parte Bogia, 56 S.W.3d 835, 840 (Tex. App.—Houston [1st Dist]. 2001, no pet.).

            After considering the
factors of article 17.15, relevant case law, and the record before us, we hold
that the trial court did not abuse its discretion in refusing to reduce Shields’s
bail from $500,000 to $50,000.  We thus overrule his issue in part.  But we do
conclude that bail at $500,000 is excessive based on the factors discussed
above and that the trial court abused its discretion in not lowering it.  Thus,
we sustain in part Shields’s issue and order a reduction in his bail to $300,000
(or $100,000 per felony count).  See Davis, 147 S.W.3d at 553.

 

 

REX D. DAVIS

Justice

 

Before
Chief Justice Gray,

Justice Reyna, and

Justice Davis

(Chief Justice Gray dissents.  A separate
opinion will not issue.  He notes, however, that he would not find the trial
court abused its discretion and therefore would not reduce bail.  He joins no
part of the opinion but believes the analysis in the opinion does not support a
determination that the trial court acted without reference to the relevant
factors.)

Affirmed
in part, reversed in part; bail set

Opinion
delivered and filed April 14, 2010

Do
not publish

[CR25]








 









[1] A “blue warrant” is an arrest warrant
issued when a parolee has been suspected of violating conditions of his
probation.  Franklin v. Kyle, 899 S.W.2d 405, 406 n.1 (Tex. App.—Waco
1995, no pet.).

 





[2] 
In Emery, 970 S.W.2d at 146
& n.1, we cited the following cases:  Ex parte Clark, 635 S.W.2d 202
(Tex. App.—San Antonio 1982, no pet.) (court reduced $150,000 bond for capital
murder and $150,000 bond for attempted capital murder to $50,000 each); Ex
parte Ivey, 594 S.W.2d 98 (Tex. Crim. App. 1980) (Court reduced appeal bond
in armed robbery case from $250,000 to $50,000); Ex parte Vasquez, 558
S.W.2d 477 (Tex. Crim. App. 1977) (reduced $100,000 bond for capital murder to
$20,000); Ex parte Bell, 784 S.W.2d 577 (Tex. App.—Houston [1st Dist.]
1990, pet. ref’d, untimely filed) (reducing appeal bond from $150,000 to
$10,000 for burglary of habitation with intent to commit sexual assault); Ex
parte Wood, 952 S.W.2d 41 (Tex. App.—San Antonio 1997, no pet.) (reducing
$350,000 bond for capital murder and $100,000 bond for aggravated robbery to
$50,000 and $20,000 respectively).








, the wording of the second clause, standing alone, "would incline us to declare the
notes not usurious." Id. (maturity of debt indicates unearned interest not collectible).
      We interpret the note and deed of trust as one transaction. Assuming without deciding that
the language of the note alone made it usurious, it is not usurious when read together with the
language in the deed of trust. We must adopt the construction which renders the notes legal. See
id. at 16. The court did not err in ruling that the Bank did not contract for, demand, charge, or
commit usury. We overrule point three.
      In a counterpoint, the Bank complains that the court erred in not granting judgment for the
full amount due under the note because the note was clearly in default, properly accelerated, and
matured at the time of trial. The court granted judgment for the annual installments due for 1989,
1990, and 1991, plus contractual interest. The Bank argues that the acceleration provision in the
deed of trust allows the remaining indebtedness at the time of default to become immediately
mature and payable.
      The Bank filed suit for $79,643.82 in principal, plus interest of thirteen percent per annum
since October 17, 1988, and attorney's fees. The deed of trust provided that upon default, the
indebtedness became immediately due and payable. The agreed statement of facts reflects that the
Bank proved up at trial a principal balance of $79,643.82 with simple interest to date of trial of
$32,876.52, plus contractual attorney's fees of $11,252.03. The court made a conclusion of law
that the Bank accelerated the note on April 11, 1990, and that if acceleration were wrongful under
the note, the Bank could have accelerated under the deed of trust. The court granted judgment for
three installments of $22,610.32 each, accrued interest, attorney's fees in the amount of $6,783,
and post-judgment interest on the total amount of the judgment from the date of signing thereof
to the date of payment at the rate of 10% per annum.
      Having found the note was properly accelerated, the court should have granted judgment for
the full amount due under the note. We sustain the Bank's counterpoint and reform the judgment
so that the Bank recovers the $79,643.82 in principal, interest at thirteen percent per annum from
October 17, 1988, to June 2, 1993, of $47,689.15, plus attorney's fees of $12,733.30. Post-judgment interest shall accrue from June 2, 1993, until paid at the rate of ten percent per annum
on $127,332.97.
      We reform the judgment and affirm the judgment as reformed.
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed as reformed
Opinion delivered and filed June 16, 1993
Do not publish